UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-20489-CIV-KING

JAMES A. BACON,

    Plaintiff,

v.

STIEFEL LABORATORIES, INC., et al.,

    Defendants.
_____/

**OPINION AND ORDER GRANTING
SUMMARY JUDGMENT FOR PLAINTIFF ON COUNT VI**

**THIS MATTER** comes before the Court upon the parties' motions for summary judgment (DE #77; #87). Therein, the parties' cross-move for judgment on the declaratory judgment claim (Count VI). Defendants also seek a ruling on Count IV that Plaintiff has not pled any claims under Rule 10b-5(a) or 10b-5(c) and thus may only pursue his securities fraud claim under Rule 10b-5(b). Plaintiff also seeks judgment on Count III of the ERISA claims and, based on collateral estoppel, the scienter and materiality elements of Count IV. The Court, upon careful review of the instant briefs and the record[1] and with the benefit of oral argument,[2] finds that Defendants' Motion should be denied and Plaintiff's Motion should be granted as to Count VI. Judgment for Plaintiff on Count VI moots Plaintiff's other claims.

---

[1] In opposition to Defendants' Motion, Plaintiff filed a Response (DE #112) on April 23, 2013 and Defendants filed a Reply (DE #129) on May 3, 2013. Defendants opposed Plaintiff's Motion in a Response (DE #104) filed April 23, 2013; Plaintiff filed a Reply (DE #128) on May 2, 2013.

[2] Oral argument was held on June 11, 2013. *See* (Tr., DE #154).

1

## I. BACKGROUND

The above-styled action is related to a series of lawsuits filed against Stiefel Laboratories, Inc. ("SLI" or the "Company") and its leadership.[3] The plaintiffs in these cases have alleged that SLI and its executives manipulated ownership of employee stock in the privately held company in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101 *et seq.*, and the Securities and Exchange Act of 1934, 15 U.S.C. § 78. Specifically, these plaintiffs have alleged that the respective defendants misrepresented the status of the company to improperly profit from its eventual sale to GlaxoSmithKline, which had not been disclosed to participants in the Employee Stock Bonus Plan ("ESBP" or the "Plan").

Plaintiff James Bacon ("Bacon") is a former employee of Defendant SLI and participant in the ESBP. He previously served as a named plaintiff in a putative class-action filed July 6, 2009 on behalf of former participants in the ESBP. *Bacon et al. v. Stiefel Laboratories, Inc., et al.*, No. 09-21871-CIV-KING ("Class Action Complaint"). This Court summarized the class allegations of stock manipulation as follows:

> Under the original terms of the Plan, the participants could not sell, trade, or redeem their shares unless they separated from the company, at which time they had the right to "put" their shares to Company. That is, they had the right to demand that the Company purchase their shares, and the Company had a duty to buy them within a certain period of time....
>
> Beginning in 2007, the Stiefel Defendants engaged in a series of actions that Plaintiffs claim amount to a scheme to force employees to sell their shares

---

[3] *See Finnerty v. Stiefel Labs., Inc., et al.*, No. 09-21871-CIV-KING (filed July 6, 2009); *Fried v. Stiefel Labs., Inc., et al.*, No. 11-20853-CIV-KING (March 11, 2011); *100079 Canada, Inc. v. Stiefel Labs., Inc., et al.*, No. 11-22389-CIV-SCOLA (filed July 1, 2011); *S.E.C. v. Stiefel Labs., Inc., et al.*, No. 11-24438-CIV-ZLOCH (filed Dec. 12, 2011); *Martinolich et al. v. Stiefel Labs., Inc., et al.*, No. 12-24212-CIV-ALTONAGA (filed Nov. 27, 2012).

back to the Company at a below-market price, while simultaneously planning to sell the Company at a much higher price than was offered to Plaintiffs. For years, the Company has maintained its stance that it wishes to remain a family-controlled operation. Indeed, on March 8, 2007, an article appeared in the *Miami Herald* stating that the Company's CEO, Charles W. Stiefel, had said that the Company had no plans [to] go public. However, things began to appear otherwise when, in August 2007, the Blackstone Group, an asset-management company that specializes in taking companies public, invested $500 million into the Company and received in return a new class of stock worth approximately $60,000 per share and a seat on the Company's board of directors. Nonetheless, another *Herald* article on August 10, 2007 reported that the Company stressed it had no plans to go public.

In fact, sometime in November 2008, the Company began to discuss with potential buyers the possible sale of the Company. Then, on November 21, 2008, the Company sent out its regular notice to Plan participants, reporting that the price of the stock—as calculated by an independent appraiser—was $16,469 per share. However, this communication also notified Plan participants that, as of January 1, 2009, the Plan was being terminated and merged into the Company 401(k) plan. Moreover, the communication stated that, for the first time in the Company's history, Plan participants were being given the option to "diversify" their Company shares by exercising a "put" option—that is, an option to sell their shares back to the Company at the current price. This option could only be exercised during February 2009.

*Bacon et al. v. Stiefel Laboratories, Inc., et al.*, 677 F. Supp. 2d 1331, 1336–37 (S.D. Fla. 2010).

In the above-styled action, the following facts are undisputed.[4] Plaintiff Bacon began working for SLI on January 18, 1988 and over the following twenty years accumulated 25.386449 shares of SLI common stock in his ESBP account. As part of a workforce reduction, Plaintiff's employment was terminated on December 8, 2008. At that time, the process for a vested participant putting his shares to the company consisted of four steps: (1) request distribution; (2) receive distribution in the form of stock

---

[4] Unless otherwise noted, these facts are taken from the Joint Pretrial Stipulation (DE #152) and from the instant briefings and exhibits filed thereto.

certificates; (3) sign, notarize, and return the stock certificates to SLI; and (4) receive payment from SLI. This process changed on January 1, 2009, when SLI instituted an "automatic put process" that combined the distribution and put steps.

On January 20, 2009, Plaintiff submitted the old distribution election form, which was dated December 29, 2008, electing to have a distribution of his shares sent to his retirement account at Fidelity Investments and checking the box to be paid in cash for his fractional shares. Plaintiff included with the form a handwritten note indicating that he wanted to exercise his put right.[5] Plaintiff also sent an e-mail to SLI employee Suni Buria the following day that asked her to confirm receipt of the paperwork he mailed for his "election."[6] Then, on February 13, 2009, SLI purchased his shares at $16,469 per share. SLI sent $83,617.88 in cash to Plaintiff and a promissory note for $334,471.53 to his Fidelity retirement account. Plaintiff later alleged in the Class Action Complaint and testified in depositions that he put his shares to the company.[7]

But Plaintiff never received, nor signed and returned to SLI, a distribution of stock certificates; neither did Fidelity on his behalf. Plaintiff also never signed the "automatic-put" form that Defendant SLI began using on January 1, 2009. Upon discovering that Defendant SLI did not possess the forms that he was required to submit in order to

---

[5] This note cannot be found. However, Plaintiff testified in his December 1, 2010 deposition that he "wrote a note that I put my stock for sale." (Bacon 12/1/10 Dep. at 280, DE #79-2, p.199).

[6] The full text of the email, minus salutation and sign-off, was: "Could you please confirm that you receive the paperwork for Stiefel Laboratories, Inc. ESBP. I sent it to you by mail yesterday with my election." (DE #89-42, p. 86).

[7] For example, when asked, "Are you 100 percent sure that you actually exercised your put back in January 2009," Plaintiff Bacon answered, "As far as I can recall, yes." (Bacon 9/28/10 Dep. at p. 44, DE #79-2, p.171).

4

exercise his put right, Plaintiff Bacon withdrew from the class-action and filed the above-styled action on February 11, 2011.

After commencing this action, Plaintiff and Defendants stipulated in June 2011 to exhaust Plaintiff's administrative remedies, as required by ERISA, by submitting a single question to the GlaxoSmithKline benefits committee. That question was "whether Bacon exercised his right, in or about January 2009, to put his 25.386448 shares of SLI common stock that he received as a distribution from the ESBP to SLI." The committee delegated its authority as Plan Administrator to Michelle Killian, vice president of U.S. benefits for GlaxoSmithKline. The Administrative Record before Ms. Killian was limited to the following items: (1) a memorandum summarizing Bacon's administrative claim; (2) the Stipulation and Agreement; (3) a form of direction to put ESBP shares to SLI; (4) a copy of the distribution form used prior to January 1, 2009; (5) "automatic-put" forms that were used starting on January 1, 2009; (6) Bacon's distribution request form; (7) the check and promissory note issued to Bacon in exchange for his shares; (8) the Class Action Complaint; (9) transcript of Bacon's September 28, 2010 deposition; (10) Bacon's email to Suni Buria dated January 21, 2009; (11) transcript of Bacon's December 1, 2010 deposition; and (12) the Complaint in the above-styled action.

In a letter dated August 29, 2011, Ms. Killian determined that Bacon had exercised his put right despite "the lack of availability of an actual put right form executed by Mr. Bacon", as required by the ESBP. Ms. Killian indicated that the absence of the put form was "outweighed by [1] his several sworn statements attesting to his exercise of the put right, [2] his contemporaneous confirmation via e-mail of his intention and completion of

5

a form to exercise his put right, and [3] his acceptance of the proceeds without providing notification of error within a reasonable time." (Killian Letter, DE #89-40).

Subsequent to Ms. Killian's decision, Plaintiff filed the Second Amended Complaint (DE #31) on October 17, 2011, adding Count VI for declaratory decree.[8] In the alternative to damages for alleged violations of ERISA (Counts I–III) and securities fraud (Count IV), the Second Amended Complaint seeks a declaration, pursuant to 28 U.S.C. § 2201, that Plaintiff never put his shares to SLI. Plaintiff's Motion for Summary Judgment is more pointed, arguing that the decision of Ms. Killian, as Plan Administrator, was arbitrary and capricious. Relief under Count VI would moot Plaintiff's other claims and require that he be compensated for his shares at the same rate as those who held shares when the merger with GlaxoSmithKline closed. The merger agreement valued each share at $68,515.29 plus contingency bonuses, which thus far have resulted in total payment of $71,485.10 per share.

## II. LEGAL STANDARD

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646

---

[8] The Second Amended Complaint also added a claim for breach of fiduciary duty (Count V), which the Court dismissed with prejudice. (DE #43).

6

(11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact"). "Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III. DISCUSSION

Count VI seeks a declaratory judgment that Plaintiff never put his shares to SLI and, thus, was a shareholder at the time the Company merged with GlaxoSmithKline. If a shareholder at the time of the merger, he would be entitled to be compensated at $68,515.29 plus contingency bonuses per share, not the $16,469 he received. Plaintiff and Defendants previously stipulated to have this question answered by the Plan Administrator, and that authority was delegated to Ms. Killian. Both sides to this case, Plaintiff and Defendants, have filed motions for summary judgment on Count VI, contending that there are no relevant issues of material fact. The issue of law for the Court's determination, as briefed and orally argued by counsel, is whether the Plan

7

Administrator's decision that Plaintiff had sold ("put") his shares to SLI was arbitrary and capricious and, therefore, exceeded her legal discretion. *See Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137, 1139 (11th Cir. 1989).

The arbitrary-and-capricious standard is deferential. The Court's role is not to second-guess the plan administrator but to review whether there was "a rational justification" for her decision. *Griffis v. Delta Family-Care Disability Plan*, 723 F.2d 822, 825 (11th Cir. 1984). Taking into account only the administrative record before the plan administrator, the Court looks for whether there was a reasonable basis for plan administrator's decision. *Glazer v. Reliance Standard*, 524 F.3d 1241, 1246–47 (11th Cir. 2008). The absence of a reasonable basis is the sine qua non of an arbitrary and capricious decision. *Shannon v. Jack Eckerd Corp.*, 113 F.3d 208, 210 (11th Cir. 1997). If a reasonable basis exists for the decision, "it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision." *Jett*, 890 F.2d at 1140. But a decision is arbitrary and capricious when there is evidence supporting a contrary decision and that evidence is not contradicted by the administrative record. *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1327 (11th Cir. 2001).

Having reviewed a complete copy of the Administrative Record,[9] the Court finds that Ms. Killian, as Plan Administrator, had no reasonable basis for determining that Plaintiff put his shares to the Company. The Administrative Record does not support the conclusion that Plaintiff exercised his put right. Indeed, an impartial analysis of the

---

[9] Defendants attached a copy of the Administrative Record to their Motion for Summary Judgment. *See* (DE #79-1; #79-2).

Administrative Record upon which the Plan Administrator reached her decision clearly demonstrates that Plaintiff *did not* put his shares to the Company. Defendants fail to identify any portion of the Administrative Record suggesting otherwise; their arguments, as did the Plan Administrator's decision, rest entirely upon what Plaintiff intended to do. Therefore, the Court finds that the Plan Administrator's decision was arbitrary and capricious. *See Levinson*, 245 F.3d at 1327.

First, Plaintiff's intent to exercise his put right was irrelevant to the process of legally requiring SLI to buy his stock. The ESPB provided participants with a formal process for putting stock to SLI. The process was explicitly outlined in both the Plan booklet (DE #79-1, pp. 5–96) and a direction memorandum from the human resources benefits manager (DE #79-2, pp. 135–141). A participant's intention was not realized unless they followed those steps, and the Plan Administrator acknowledged that Plaintiff did not follow either the pre- or post-January 1, 2009 processes for putting his shares to SLI. Yet, of the three factors that she said outweighed the "lack of availability" of the put form, two went to Plaintiff's intent to exercise his put right.[10] The Court, without deciding whether Plaintiff Bacon was required to follow the old procedures in place when his employment was terminated on December 8, 2008 or the "automatic-put" process in place when he attempted to receive a distribution of his shares, finds that the

---

[10] Additionally, the Plan Administrator mischaracterized Plaintiff's intent as confirmation that he exercised his put right. First, she made the conclusory finding that because he testified in depositions to putting his shares to SLI he in fact did so. Second, she misread the nature of Plaintiff's January 21, 2009 e-mail to Suni Buria as confirming Plaintiff's "intention and completion of a form to exercise the put right." In fact, the e-mail requested confirmation when Suni Buria received Plaintiff's *election* paperwork. Under the put process that governed the form Plaintiff submitted, electing to receive distribution of shares was the first of four steps and did not require SLI to purchase the shares until they were signed, notarized and returned to the Company.

Administrative Record can be read only one way: Plaintiff did not follow either ESPB process for exercising his put right and, therefore, could not require SLI to buy his shares. As an ESPB participant, Plaintiff was prohibited from offering to sell shares and could only cash out by exercising his put right. Just as he could not offer to sell his shares to SLI outside of the put process, SLI could not accept an offer of sale or make its own offer to buy outside the formal put process.

Second, the only other factor that the Plan Administrator said outweighed Plaintiff's failure to submit a put form was "his acceptance of the proceeds without providing notification of error within a reasonable time." This factor, like the other two, seems to be influenced by Ms. Killian's perception of Plaintiff's intent; it also is conclusory. With it, the Plan Administrator attempts to prove the exercise of Plaintiff's put right with a negative (i.e., because Plaintiff did not notify SLI that payment was in error, the payment was not in error). But putting shares to SLI required positive action, not inaction or an omission.

The cases asserted by Defendants in support of their legal position on Count VI are not persusasive.

In *Griffis v. Delta Famiy-Care Disability* the administrative committee's decision pertained to interpreting the scope of eligibility in the employee benefits plan. 723 F.2d 822. The decision denying benefits was upheld because the administrative committee had been given the exclusive authority to interpret the scope of eligibility for benefits and there was a rational basis for the committee's interpretation that survivor benefits could not be reinstated once terminated as a result of remarriage. *Id.* at 825. In the above-styled

action, Ms. Killian's decision did not interpret the ESBP's put process and suggest a rational basis for requiring SLI to purchase the shares of an ESPB participant who had not followed the formal put process. Her decision merely stated that, based on Plaintiff's intent to exercise his put right and his inaction after receiving payment for his shares, there were enough facts to find that Plaintiff had followed the put process, even though stock certificates were never issued and no "automatic-put" form could be found.

The district court in *Jett v. Blue Cross and Blue Shield of Alabama, Inc.* erred in finding that the Blue Cross plan administrator's decision was arbitrary and capricious based on "information that had not been presented to Blue Cross." 890 F.2d at 1139. But in the above-styled action, the Court's finding is based solely on the Administrative Record before the Plan Administrator at the time she made her decision. That record alone provides no reasonable basis for the Plan Administrator's decision that Plaintiff exercised his put right. Therefore, the decision was arbitrary and capricious. *See id.* at 1140.

Finally, in *Brown v. Blue Cross and Blue Shield of Alabama* it was reasonable for the administrator to deny a claim when medical records prepared at the time of the claimant's hospital admission conflicted with a subsequent letter from the claimant's doctor detailing emergency symptoms. 898 F. 2d at 1571–72. The plan administrator, after seeking additional information from the claimant's doctor and receiving no reply, found the hospital admission records to be more reliable. "Even a self-interested fiduciary is entitled to choose an apparently more reliable source of information when sources conflict." *Id.* at 1572. But *Brown* too is unlike the facts in the above-styled action.

11

Plaintiff never said he submitted the "automatic-put" form or received, signed, notarized and returned stock certificates to SLI. His deposition testimony indicates that he submitted the distribution election form and that he intended to exercise his put right. But there is no conflicting evidence that Plaintiff actually completed the ESPB put process.

The facts of this case are more similar to those in *Levinson v. Reliance Standard Life Insurance, Co.*, in which a lawyer was denied disability benefits under his law firm's employee benefits plan. 245 F.3d 1321 (11th Cir. 2001). Aside from a "report from his law firm indicating that Levinson was a full-time employee," there was no evidence before the plan administrator that contradicted Levinson's "evidence from his physician that he was totally disabled under the terms of the plan." *Id.* at 1327. Upon these facts, the Eleventh Circuit affirmed a district court finding that the plan administrator's denial of benefits was arbitrary and capricious because it lacked a reasonable basis. *Id.*

The undisputed facts in this case make plain that while Plaintiff may have intended to put his shares to SLI, he did not submit the requisite paperwork and, therefore, never actually did so. There is no evidence in the Administrative Record to the contrary. Accordingly, the Plan Administrator's decision was arbitrary and capricious. *See id.* at 1327. Plaintiff is entitled to judgment as a matter of law on Count VI. The Court need not address the remaining Counts because they are mooted by a finding for Plaintiff on Count VI.

### IV. Conclusion

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED,** and **DECREED** that Plaintiff's Motion for

Summary Judgment (**DE #87**) be, and is hereby, **GRANTED as to Count VI**. Judgment is entered for Plaintiff on Count VI, and all pending motions are **DENIED as moot**. Plaintiff's counsel is directed to file a proposed order of Final Judgment in accordance with the terms of this Order within five (5) days, with the Court retaining jurisdiction to affix fees and costs, if applicable.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 19th day of June, 2013.

*James Lawrence King*
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

**Cc: All Counsel of Record**